IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE GOOGLE ACCOUNT:  **brob77387@gmail.com**  THAT IS STORED AT PREMISES CONTROLLED BY: GOOGLE LLC | Case No.  24-6080-BGS |
| --- | --- |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Brittany A. Bayles, Special Agent of the Federal Bureau of Investigation, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application for a search warrant for information associated with "**brob77387@gmail.com**" that is stored at premises owned, maintained, controlled, or operated by Google LLC **AND** Google Payment Corporation ("Google"), an electronic communications service and/or remote computing service provider headquartered at 1600 Amphitheater Parkway, Mountain View, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.     I have been employed as a Special Agent of the FBI since February 2022. I am currently assigned to the FBI Kansas City Division, Wichita Resident Agency. As a Special Agent

of the FBI, I am authorized to investigate violations of laws of the United States, and I am a law enforcement officer with authority to execute arrest and search warrants under the authority of the United States, including violations of Title 18, United States Code § 2251, United States Code § 2252, and United States Code § 2252A. I have participated in a wide variety of criminal investigations, to include violent crime, crimes against children, human trafficking, major theft, and other federal crimes. I have participated in the preparation and execution of many search warrants, including, but not limited to, those involving the sexual exploitation of minors and certain activities relating to material constituting or containing child pornography.

3.      The information in this affidavit is information known to me as a result of my participation in this investigation or is information that has been communicated to me by other law enforcement investigators involved in this investigation. Since this affidavit is being submitted for the limited purpose of supporting a search warrant, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only those facts that I believe are necessary to establish the existence of probable cause to support a search warrant.

4.      As will be shown below, there is probable cause to believe that the identified Google Account described in Attachment A will contain evidence of the receipt, possession, production, or distribution of obscene visual representations of the sexual abuse of children, in violation of Title 18, United States Code § 2251, United States Code § 2252, and United States Code § 2252A. I submit this application and affidavit in support of a search warrant authorizing the search of the Google Account described in Attachment A. I seek authorization to seize and examine evidence, fruits, and instrumentalities of the foregoing criminal violations, which relate to the aforementioned criminal violations, and as further described in Attachment B.

2

## INVESTIGATION/PROBABLE CAUSE

4.       Highly summarized, this investigation involves a CyberTip and undercover contact that connects to **AUSTIN GLENN BROM (BROM)**.

5.       On September 27, 2021, Kansas Internet Crimes Against Children Unit (ICAC) in Wichita, Kansas began an investigation into BROM after receiving a CyberTip from the National Center for Exploited and Missing Children (NCMEC). A CyberTip was received by NCMEC for child pornography found to be maintained in the Facebook account associated with BROM.

6.       The CyberTip contained two videos that were uploaded by BROM's Facebook account (Username: Austin Brom, Associated Email: bromaustin459@gmail.com) including a 45 second video of a prepubescent female penetrating her vagina with what appears to be a pen. The second video is 38 seconds in length and depicts an adult male having sexual intercourse with a prepubescent female.

7.       The phone number identified on the Facebook account was **(316) 364-0650**. This number was later determined to be associated with Brom as set forth in the following paragraphs. Through ICAC's investigation, an IP address utilized to access BROM's Facebook account resolved to 1838 S Topeka Street, Wichita, Kansas 67211. This residence belongs to BROM's mother, Melissa Poston (Poston).

8.       As part of the investigation, ICAC detectives spoke with Poston at her residence. Poston advised BROM did not live with her but has stayed the night with her on occasion. Poston did not know where BROM was living as he does not have a vehicle and has a history of drug use.

3

### The Undercover connects to Kelly's residence

9.      Sometime in February 2023, a FBI online covert employee (OCE) in San Francisco, CA, joined a public Kik group "Family Fun" (#family.fun.allage) portraying a mid-30-year old mother of two purported minor daughters. Within this public Kik group, sexual exploitation of minors was discussed.

10. On or about February 23, 2023, Kik user "entombed by" (display name: It's Me!), who was already a member of this group, engaged the OCE in private messaging. The user, later identified as Brom (BROM), told the OCE he was a 31-year-old male named Justin who lived outside of Topeka, Kansas. He also told the OCE he had a 14-year-old daughter.

11.     On or about February 23, 2023, the OCE asked BROM if he was active with his "lil" (referring to his daughter). BROM stated, "I wish." The OCE and BROM began discussions about the OCE's purported daughters. BROM asked how old the OCE's daughters were, and she told BROM 7 and 9. The OCE asked if that was too young and BROM replied, "Not at all." BROM went on to describe putting his "cock" in their mouths and how he wanted the girls to enjoy it. BROM continued discussing the sexual things he would do to the girls. BROM stated he would rather not use a condom but would use flavored lube for the girls to taste. The two then began discussing BROM traveling to California to exploit the OCE's purported daughters. BROM inquired about how long he could stay and the two discussed where he would stay. BROM advised he would like to stay at the OCE's house and have the girls in their bed or in the OCE's bed. They agreed on BROM staying in a hotel to begin. BROM advised he would need to plan the trip in advance and would like at least three days with them and be naked the entire time. BROM proposed the idea of planning a trip "next month" to California.

12.     On or about March 5, 2023, BROM sent an image to the OCE. The image depicted a prepubescent female's genitals exposed with a penis ejaculating onto the female genitals.

13.     On or about March 29, 2023, BROM told the OCE, "I was chatting with a 13 yr. old the other night and she was sending me videos of her doing whatever I told her to do. It was so hot." BROM further stated, "It made me wish I could be with your girls while you watch." BROM advised he met the 13-year-old on Kik. He stated he had her "Slapping her clit. Fucking her pussy and tasting her pussy on her fingers." BROM asked the OCE if she wanted to see and proceeded to send the OCE two images and four videos. One image depicted an undetermined age female with her buttocks and genitalia exposed. The second image depicted an undetermined age female with her breasts exposed. Two of the videos depict an undetermined age female digitally penetrating her vagina and then putting her fingers in her mouth. The other two videos depict an undetermined age female rubbing her genitalia with her fingers. After receiving the videos, the OCE asked, "She's only 13" and BROM replied, "That's what she told me." BROM proceeded to send the OCE a video depicting a male masturbating to pornography on the television in the background.

14.     Within the timeframe of communications with the OCE, the BROM utilized an IP address that returned to Cox Communications on multiple occasions. Cox Communications is a known provider of non-mobile residential internet service.

15.     On or about April 26, 2023, Cox Communications provided the following information for the account tied to IP address 68.103.177.126, utilized by Kik user "entombed by" pursuant to a subpoena:

    Market: Kansas
    Name: Justin Kelly
    Address: 1658 South Fern Street, Apt 202, Wichita, Kansas 67213-3676

5

Home Phone: 316-365-0781
Customer Status: Active

16.      This information indicated BROM was likely a person residing, or in regular contact, with the residence of Justin Kelly (Kelly). Investigators were able to confirm that BROM and Kelly were associated as set forth in paragraph 20.

17.      A search warrant was served to KIK account "entombed_by." KIK provided records for the account indicating Kelly was not the user of "entombed_by." BROM was subsequently identified as the user through photographs and tattoos.

18.      A subpoena was served on T-Mobile for the phone number associated with the IP address - phone number (316) 365-0781. T-Mobile provided subscriber information for Kelly. Within the records, a top contact of Kelly's was (316) 364-0650, which was the number linked to Brom's Facebook account in 2021 as set forth in paragraph 7.

19.      As part of the investigation, ICAC detectives spoke with Poston at her residence. Poston advised BROM did not live with her but has stayed the night with her on occasion. Poston did not know where BROM was living as he does not have a vehicle and has a history of drug use.

### BROM connects to Justin Kelly's residence

20.      On or about October 5, 2022, BROM was arrested by the Wichita Police Department for a drug violation. During this encounter, BROM was found to be in possession of a maroon 2002 Buick Le Sabre bearing Kansas license plate '982RGH'. The vehicle is registered to Justin Kelly at 538 N McComas, Apt 3, Wichita, Kansas 67203. This address was listed as a previous residence of BROM and another common associate of Kelly and BROM.

21.　　On or about March 8, 2023, MediaLab Inc. provided the following information for

Kik username "entombed_by" (display name: It's Me!) pursuant to a subpoena:

> First name: It's
> Last Name: Me!
> Email: ibeawesome@gmail.com
> User Location: US (IP: 75.243.245.114)
> User Location Timestamp: 2023/03/08 18:20:57 UTC
> Registration Timestamp: 2022/04/08 15:15:44 UTC
> Phone Type: Android Brand
> Motorola Model: Moto g power (2021)
> Birthday: 1991-04-08
> Recent IP Activity:
> 75.243.245.114 2023/03/07 23:52:00 UTC (Verizon)
> 174.213.193.36 2023/03/07 06:00:28 UTC (Verizon)

This information indicated the SUBJECT was using a mobile device associated with Verizon.

22.　　On or about March 24, 2023, Google provided the following information for

Google account identifier ibeawesome@gmail.com pursuant to a subpoena:

> Google Account ID: 291041225976
> Name: John Proctor
> E-mail: ibeawesome@gmail.com
> Created on: 2007-10-10 07:18:49 Z1
> Terms of Service IP: 146.244.190.97
> Services: Gmail, Google Hangouts
> Last Updated Date: 2008-4-15 15:12:29 Z
> Last Login 2007-12-12 08:39:52 2007-12-09 07:11:48 Z, 2007-11-16 02:04:23 Z
> Recovery E-mail: none provided
> Recovery SMS: none provided
> IP Activity: No User IP Logs

23.　　Investigators obtained subscriber information for Kelly's phone number and

observed that a top/frequent contact for Kelly was the phone number associated with BROM,

identified as (316) 364-0650. This indicated BROM had likely been at Kelly's residence,

consistent with the activity reported by Kik during the time of communication with the OCE.

24.          On September 27, 2023, a search warrant was served to Verizon Wireless for BROM's phone records associated with (316) 364-0650. Pursuant to the search warrant, records indicated BROM's cell phone signal hit consistently on Verizon cell towers in the Humboldt, Kansas area within the previous months leading up to the service of the search warrant. Upon further investigation, it was discovered an address of 711 Pine St., Humboldt, Kansas 66748 was associated with BROM.

25.          On or about November 29, 2023, surveillance was initiated in the area of 711 Pine St., Humboldt, Kansas 66748. A white male, identified as BROM, was observed to be living at the residence and is believed to be the only individual residing at the residence. Through open-source database searches, the residence is owned by Loren and Janet Korte.

26.    A red 2003 Ford F-350 bearing Kansas license plate '128PXC' and a white 2010 Ford F-150 bearing Kansas license plate '152NBK' have consistently been observed parked in the driveway behind the residence. Both vehicles are registered to Matthew Korte (Korte), residing at 717 S 7th St., Humboldt, Kansas 66748. This residence is located directly south of the residence. A black enclosed trailer with markings of "Korte Construction/Remodel 620-228-8637" has also consistently been parked in the driveway between the Pine Street residence and Korte's residence. BROM has been seen driving both vehicles with the trailer attached at times.

27.          BROM is normally seen to be wearing clothing indicating he works or is associated with "Korte Construction/Remodel". Pursuant to legal process served on (620) 228-8637, it was determined the subscriber is Korte and BROM is one of Korte's top contacts with (316) 364-0650. A second white male has been seen in the area of the vehicles with BROM on several occasions. It is believed the second white male is Korte, due to coming and going from the 717 S 7th St. address directly south of the Pine Street residence.

8

**Execution of a Search Warrant at the 711 Pine Street residence**

28.     On January 18, 2024, I applied for and obtained a search warrant for the 711 Pine Street residence.

29.     On January 19, 2024, agents executed the search warrant at the 711 Pine Street residence. Because BROM did not answer the door and was not responsive to announcements of their presence, agents called the BROM's phone using **(316) 364-0650**. Brom answered, and when SA Molly Ohnoutka advised it was the FBI and asked him to come to the front door, BROM hung up. SA Ohnoutka attempted to call BROM back but received no answer.

30.     Korte approached agents and advised that he had not seen BROM since BROM had gone to Wichita for the holidays.

31.     While agents were conducting the search, BROM repeatedly called SA Ohnoutka from the **(316) 364-0650.** SA Ohnoutka answered and advised the case agent would call him. SA Bayles called BROM at **(316) 364-0650** shortly thereafter. BROM asked questions about what was going on. SA Bayles made arrangements to meet BROM at the FBI Wichita Resident Agency at 2:00pm on January 19, 2024, to discuss the search warrant. During the call, SA Bayles did not tell BROM the crime under investigation or the basis for the search warrant.

32.     BROM called SA Bayles from **(316) 364-0650** shortly after making arrangements to meet at 2:00pm. BROM requested the meeting be rescheduled for "next week" so BROM could bring his lawyer with him. SA Bayles provided BROM with her contact information and advised to have BROM's attorney contact SA Bayles to set up a meeting.

**Connecting BROM to 1838 S Topeka Street**

33.     On or about January 24, 2024, a search warrant was served to Verizon for GPS location on **(316) 364-0650** and a pen register/trap and trace. Verizon provided longitude/latitude

information as well as a various of ranges in which the cell phone associated with **(316) 364-0650** is located. When plotted on a map, the latitude/longitude data points are consistently in the area of the 1838 S Topeka Street, Wichita, Kansas 67211. This is the address in which Poston resides as well as the same residence Korte indicated BROM was last known to be at.

34.     On or about February 9, 2024, FBI Agents conducted physical surveillance in the vicinity of 1838 S Topeka Street, Wichita, Kansas 67211. BROM was seen wearing jeans and a gray hooded sweatshirt on the front porch of the residence for several minutes. BROM walked in and out of the house several times over the course of approximately one hour. BROM put what appeared to be a tool bag in the back of a silver SUV and left the residence. Agents observed the vehicle to be a silver 2014 Mitsubishi Outlander, bearing Kansas license plate '366KZB'. The vehicle returned to Melissa Poston at 1838 S Topeka Street, Wichita, Kansas 67211. Agents positively identified BROM on the front porch of that residence as well as operating the silver 2014 Mitsubishi Outlander.

### Execution of Federal Arrest and Search Warrant at 1838 S Topeka Street

35.     On or about February 16, 2024, FBI Agents executed a federal arrest warrant and a federal search warrant at 1838 S Topeka Street, Wichita, Kansas 67211. BROM was arrested and the cell phone in his possession at the time of his arrest was seized.

36.     On or about February 16, 2024, BROM's cell phone was taken to the Kansas Internet Crimes Against Children Unit for a digital extraction to be conducted. The digital extraction revealed BROM factory reset his phone on January 19, 2024. This was the day the search warrant was executed at the residence in Humboldt, Kansas, referenced in paragraph 28.

10

**Additional NCMEC CyberTip associated with BROM**

37.     The digital extraction also revealed a Google account associated with BROM's phone of 'brob77387@gmail.com' (TARGET ACCOUNT). After the Google account was discovered, investigators searched for NCMEC CyberTips related to the associated account. A NCMEC CyberTip (182540218) reported by Facebook was discovered that was associated with the TARGET ACCOUNT. Further information within the CyberTip provided Facebook account name 'Bro Bro' with a screen name of 'Bro.Bro.6969', User ID 100044568663151, and associated email address brob77387@gmail.com.. The CyberTip reported on or about December 13, 2023, the user of TARGET ACCOUNT received one video depicting a pubescent minor involved in a sexual act from another Facebook user via Facebook Messenger. During the time the Facebook user sent TARGET ACCOUNT the video, TARGET ACCOUNT responded immediately following the video, "Mmmmmm I'll give it to you baby. And I'll let my friend fill you up immediately after I do with his cum too" and "My cock is very thick it would stretch your tiny little pussy so much".

38.     On or about December 16, 2023, Facebook estimated the location of the TARGET ACCOUNT to be in Wichita, Kansas. It was discovered during the arrest and search warrant execution that BROM had moved back to Wichita around the holidays, but it was unclear what the exact day was. Further investigation of "Bro Bro" Facebook account contained similar information related to BROM that was found on other social media accounts such as previous places lived and Facebook "friends." The TARGET ACCOUNT located on Brom's cell phone was the same TARGET ACCOUNT used for the Facebook account. A Google Account can only be created one time. If another individual attempts to create a Google account that is already being used, the

11

individual will be notified that Google account is already taken and will be prompted to create a different account name.

**BROM's Indictment**

39.     On February 21, 2024, BROM was indicted by Grand Jury in the United States District Court-District of Kansas for one count of **Possession of Child Pornography [18 U.S.C. § 2252A(A)(5)(B)].**

**CHARACTERISTICS COMMON TO INDIVIDUALS
WITH A SEXUAL INTEREST IN CHILDREN**

41.     Based upon my knowledge, experience, and training in child exploitation and child sexual abuse material (CSAM) investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals with a sexual interest in children. These characteristics particularly apply to individuals involved in possessing or distributing child pornography online, including those accessing websites whose primary content is child pornography or child sexual abuse material. These common characteristics include that the individuals:

a.     Individuals who seek, collect, and trade child pornography typically have a sexual interest in children and receive sexual gratification from viewing children engaged in sexual activity or in sexually suggestive poses, or from literature describing such activity.

b. These individuals may collect or view sexually explicit or suggestive materials, in a variety of media, including in hard copy and/or digital formats. These individuals oftentimes use these materials for their own sexual arousal and gratification. They may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse or groom a child to participate in sexual activity, or to demonstrate desired sexual acts to a child. They may also use toys, games, costumes, sexual clothing, sexual paraphernalia, and children's clothing to lure or entice children. They may keep "trophies" or mementos of sexual encounters with children, or items that they use to gratify a sexual interest in children, such as by collecting children's underwear or other items belonging to a child.

c. These individuals may take photographs that either constitute child pornography or indicate a sexual interest in children (such as upskirt photos), and may do so by using cameras, video cameras, web cameras, and cellular telephones. Such images and videos may be taken with or without the child's knowledge. This type of material may be used by the person to gratify a sexual interest in children.

d. These individuals maintain their collections in a safe, secure, private, and accessible environment, frequently making use of digital devices. However, many child pornographers make use of hard-copy printed material. Both digital and hard copy format child pornography is usually hidden so that the material is not found by other members of the residence or by anyone who might enter the home. Such hiding places could include but are not limited

13

to garages, sheds, attics, vehicles, bags, and pockets. Digital files and devices may be password protected, encrypted, or otherwise protected.

e.     These individuals often maintain their collections of child pornography and other materials indicating a sexual interest in children for a long period of time—commonly over the course of several years. These collections are also frequently maintained despite changes in residence or the acquisition of different or newer computer devices.

f.     Many of these individuals correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, screen names, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child sexual exploitation. Such correspondence may take place, for example, through online bulletin boards and forums, Internet-based chat messaging, email, text message, video streaming, letters, telephone, and in person. In some cases, these individuals may have joint involvement in child sexual exploitation activities with others within their household or with whom they share a close relationship (e.g., brothers/siblings dating partners, or coworkers).

## **BROM displays common characteristics**

42.     BROM has had a known sexual interest in children since 2021 when the Kansas ICAC opened an investigation after receiving a CyberTip from NCMEC. BROM continued with

14

similar interests when coming into contact with a FBI undercover employee in February 2023 on a Kik group known for individuals with a sexual interest in children. BROM elaborates on plans to travel to California to engage in sexual activities with the undercover's purported minor daughters. Within the communication, BROM sent images and videos containing CSAM to the undercover that he described as being sent to him at his direction. More recently in December 2023, a CyberTip was reported on a Facebook account believed to be associated with BROM. Based on these circumstances, BROM demonstrates several of the above characteristics, making it more probable that evidence of BROM's involvement in child sexual abuse/exploitation material will be found within the Facebook account associated with the TARGET ACCOUNT.

## BACKGROUND CONCERNING GOOGLE[1]

43.    Google is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google Maps, and a free traffic tracking service

---

[1]    The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages:  the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; or product pages on about.google.com.

called Waze. Many of these free services offer additional functionality if the user signs into their Google Account.

44.     In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device, and a Google Account is required for certain functionalities on these devices.

45.     Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the log-in username for access to the Google Account.

46.     Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after the description of services below.

47.     The following services are requested from Google LLC:

        a.      User-provided name, Account email address(s), Account status (e.g. enabled), Google services used by account, Recovery email(s) and SMS recovery number(s), Account creation and Time, Terms of service IP address, date, time, Language, Google Account ID (an internal Google identifier for the account), Last logins to the account, including IP address, date, and time, Accounts associated with a particular device, SMS recovery

16

number, IMEI, or Android ID, Credit card numbers and transaction records associated with account(s).

b.    Email headers, Access and activity logs, Deletion and change logs, Accounts associated by cookie, SMS number, recovery email, or IP address, Google play store records of applications purchased or installed on a particular device, Device records.

c.    Address book information, Content (e.g., emails, videos, pictures, files, messages, voicemails, etc.), Location history, Search and browsing history, Accounts recorded in a geographic area at a discrete time (geofence), Accounts that searched certain terms at a discrete time (search of searches).

48.    Google integrates its various services to make it easier for Google Accounts to access the full Google suite of services. For example, users accessing their Google Account through their browser can toggle between Google Services via a toolbar displayed on the top of most Google service pages, including Gmail and Drive. Google Hangout, Meet, and Chat conversations pop up within the same browser window as Gmail. Attachments in Gmail are displayed with a button that allows the user to save the attachment directly to Google Drive. If someone shares a document with a Google Account user in Google Docs, the contact information for that individual will be saved in the user's Google Contacts. Google Voice voicemail transcripts and missed call notifications can be sent to a user's Gmail account. And if a user logs into their Google Account on the Chrome browser, their subsequent Chrome browser and Google Search activity is associated with that Google Account, depending on user settings.

49.    When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information, including the user's full name, telephone number,

birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment.

50.     Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), details about the devices used to access the account, and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

51.     Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

52.     In my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

53.     Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.     Thus, stored communications and files connected to a Google Account may provide direct evidence of the offenses under investigation.

54.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Google can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

55.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.,* information indicating a plan to commit a crime), or consciousness of guilt (*e.g.,* deleting account information in an effort to conceal evidence from law enforcement).

56.     Other information connected to the use of a Google account may lead to the discovery of additional evidence. For example, the apps downloaded from the Google Play store

may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

57.      Therefore, Google's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Google services.  In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

58.     Based on my training and experience, and the facts as set forth in this affidavit,

there is probable cause to believe on the computer systems in the control of Google LLC and

Google Payment Corporation there exists evidence of crime, Title 18, United States Code § 2251,

United States Code § 2252, and United States Code § 2252A. Accordingly, a search warrant is

requested.

59.     This Court has jurisdiction to issue the request warrant because it is "a court of

competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and

2703(C)(1)(A). Specifically, the court is a "district court of the United States that has jurisdiction

over the offense being investigated," 18 U.S.C. § 2711(3)(A)(i).

60.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer not

required for the service or execution of this warrant.

Brittany A. Bayles
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me telephonically this _____ day of March, 2024.

_____
HONORABLE GWYNNE E. BIRZER
United States Magistrate Judge

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to information associated with **brob77387@gmail.com**, (TARGET ACCOUNT) that is stored at premises owned, maintained, controlled, or operated by Google LLC **and** Google Payment Corporation, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

2

## ATTACHMENT B

### Particular Things to be Seized

I. **Information to be disclosed by Google LLC AND Google Payment Corporation ("Google")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, Google is required to disclose to the government for each account or identifier listed in Attachment A the following information from the creation of account to present, unless otherwise indicated:

a.    All business records and subscriber information, in any form kept, pertaining to the Account, including:

   1.    Names (including subscriber names, usernames, and screen names);

   2.    Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);

   3.    Telephone numbers, including SMS recovery and alternate sign-in numbers;

   4.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;

   5.    Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers

   6.    Length of service (including start date and creation IP) and types of service utilized;

   7.    Means and source of payment (including any credit card or bank account number); to identify potential purchases of child sexual abuse material and the accounts that were linked to that purchase; and

8. Change history; tool used to list the changes a user has made to their account during the past two years.

b. All device information associated with the Account, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

c. Records of user activity for each connection made to or from the Account(s), including, for all Google services, the date, time, length, and method of connection, data transfer volume, usernames, source and destination IP address, name of accessed Google service, and all activity logs

d. The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, and deleted emails; attachments; the source and destination addresses associated with each email; the size, length, and timestamp of each email; and true and accurate header information including the actual IP addresses of the sender and recipients of the emails

e. Any records pertaining to the user's contacts, including: address books; contact lists; social network links; groups, including Google Groups to which the user belongs or communicates with; user settings; and all associated logs and change history

f. The contents of all text, audio, and video messages associated with the account, including Chat, Duo, Hangouts, Meet, and Messages (including SMS, MMS, and RCS), in any format and however initially transmitted, including, but not limited to: stored, deleted, and draft messages, including attachments and links; the source and destination addresses associated with each communication, including IP addresses; the size, length, and timestamp of each communication; user settings; and all associated logs, including access logs and change history.

g. The contents of all records associated with the account in Google Drive (including Docs, Sheets, Forms, and Slides) and Google Keep, including: files, folders, media, notes and note titles, lists, and other data uploaded, created, stored, or shared with the account including drafts and deleted records; the creation and change history of each record; accounts with access to or which previously accessed each record; any location, device, other Google service (such as Google Classroom or Google Group), or third party application associated with each record; and all associated logs, including access logs and IP addresses, of each record.

h. The contents of all media associated with the account in Google Photos, including: photos, GIFs, videos, animations, collages, icons, or other data uploaded, created, stored, or shared with the account, including drafts and deleted records; accounts with access to or which previously accessed each record; any location, device, or

2

third-party application data associated with each record; and all associated logs of each record, including the creation and change history, access logs, and IP addresses.

i.  All maps data associated with the account, including Google Maps and Google Trips, including: all saved, starred, and privately labeled locations; search history; routes begun; routes completed; mode of transit used for directions; My Maps data; accounts and identifiers receiving or sending Location Sharing information to the account; changes and edits to public places; and all associated logs, including IP addresses, location data, and timestamps, and change history.

j.  All Location History and Web & App Activity indicating the location at which the account was active, including the source of the data, date and time, latitude and longitude, estimated accuracy, device and platform, inferences drawn from sensor data (such as whether a user was at rest, walking, biking, or in a car), and associated logs and user settings, including Timeline access logs and change and deletion history.

k.  All payment and transaction data associated with the account, such as Google Pay and Google Wallet, including: records of purchases, money transfers, and all other transactions; address books; stored credit; gift and loyalty cards; associated payment cards, including any credit card or bank account number, PIN, associated bank, and other numbers; and all associated access and transaction logs, including IP address, time stamp, location data, and change history;

l.  All internet search and browsing history, and application usage history, including Web & App Activity, Voice & Audio History, Google Assistant, and Google Home, including: search queries and clicks, including transcribed or recorded voice queries and Google Assistant responses; browsing history, including application usage; bookmarks; passwords; autofill information; alerts, subscriptions, and other automated searches, including associated notifications and creation dates; user settings; and all associated logs and change history.

m.  All activity: All activity relating to Google Play, including: downloaded, installed, purchased, used, and deleted applications, movies, music, television shows, books, magazines, and other files; details of the associated device and Android ID for each application, medium, or file; payment transactions; user settings; and all associated logs, including IP addresses, timestamps, and change history.

n.  All Google Voice records associated with the account, including: forwarding and other associated telephone numbers, connection records; call detail records; SMS and MMS messages, including draft and deleted messages; voicemails, including deleted voicemails; user settings; and all associated logs, including access logs, IP addresses, location data, timestamps, and change history.

     o.     The contents of all media associated with the account on YouTube, whether active, deleted, or in draft, including: copies of videos and other media only if uploaded to, saved to, shared by or shared Google with the account; playlists; connected applications; associated URLs for each record; creation and change history; privacy settings for each record; and all associated logs, including IP addresses, locations, timestamps, and device identifiers; A record of the account's YouTube Watch History, including: accessed URLs and their associated duration, privacy settings, edits, comments, likes, chats, and other interactions, including associated URLs; search history; channels; subscriptions; subscribers, friends, and other contacts; IP addresses, change history, location information, and uploading account or identifier; the logs for each access by the account, including IP address, location, timestamp, and device identifier; and change history. Records associated with the account's YouTube registration, including the account's display name, IP logs, channel ID, account registration information, and registration email.

Google is hereby ordered to disclose the above information to the government within **14** days of issuance of this warrant.

**Information to be seized by the government**

     All information described above in Section I that constitutes fruits, contraband, evidence, and/or instrumentalities of violations of Title 18, United States Code §§ 2251, 2252, 2252A, those violations involving **Austin Glenn Brom,** and occurring since creation of the account including, for the account listed on Attachment A, information pertaining to the following matters:

     a.     Communications of child pornography, sexual abuse of minors, or any indication of relevant involvement within these crimes.

     b.     Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

     c.     Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

     d.     The identity of the person(s) who created or used the Account, including records that help reveal the whereabouts of such person(s).

     This warrant authorizes a review of electronically stored information, communications, other records, and information disclosed pursuant to this warrant in order to locate evidence, fruits,

and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.